**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARBARA TARNOSKI,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:04-0060 |
| | : | (MANNION, M.J.) |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant | : | |
| | : | |

**MEMORANDUM**

This matter is before the court for decision following a non-jury trial held in January 2006. This memorandum will constitute the courts findings of fact and conclusions of law in the matter.

**Background**

On January 11, 2004 the plaintiff filed a federal tort claim action (FTCA) against the United States, pursuant to 28 USC § 2671 et. seq., in the United States District Court for the Middle District of Pennsylvania. (Doc. No. 1). The complaint alleged that the plaintiff was a business invitee at the United States Post Office, Route 507, Greentown, Pa. on July 31, 2002. On that date, according to the complaint, the post office premises had a "....dangerous and occulted condition to persons such as the plaintiff, entering the premises for postal business, because of the defective and dangerous construction of a step in the public entry ways to said post office, plus the omission by said employees to warn her of the said condition, or to either barricade, safely direct foot traffic, or to otherwise make the entryway safe...." (Doc. No. 1).

While stepping onto the entry porch of the post office, the plaintiff's foot allegedly got caught on the rising portion of the concrete porch and she fell. This resulted in bruises to her shin bone, knee and jaw. As a result of the fall, the plaintiff's lower jaw struck her upper teeth and dislodged the cap & post of her right K-9 tooth. The plaintiff returned to her car and drove to her office (she is a dentist) where her husband, also a dentist, removed the broken cap, post and nerve root. The plaintiff claims medical bill in the amount of $2019.00, together with unbilled services performed by her husband in the amount of $1250.00. She also claims future medical expenses of no less than $2000.00 every five years for the replacement of the partial dental appliance.

The Government responded that "....the premises were maintained in a reasonably safe condition. The place where the plaintiff fell was clear, open and obvious...that plaintiff's own negligence was the cause of her fall and subsequent injuries...(and) that the negligence of the plaintiff was more substantial than any negligence on the part of the Postal Service." (Doc. No. 23).

**<u>Findings of Fact</u>**

The following is a rendition of the facts and evidence presented at trial which the court has credited, and thereby constitutes the courts findings of fact. On the afternoon of July 31, 2002, the plaintiff was taking a package to be mailed at the Greentown Post Office. She was wearing sneakers and described the package she was carrying as very small, not in anyway

obstructing her view. She was familiar with this post office premises as she had mail packages, virtually daily, since 1996. She described the Post Office as the only business on the premises. She had been in the parking lot many times, but usually parked on the opposite side of the building.

On this day, the parking lot was quite full and plaintiff did not want to squeeze her car between other parked vehicles so she proceeded to the side of the building and parked somewhat adjacent to the side of a concrete porch which runs the length of the front of the Post Office. Although this was not a marked parking slot, she had seen others park in this location in the past. As she left her vehicle carrying the package to be mailed, she was wearing the glasses she uses for work, nothing was blocking her view, the weather was sunny and dry, and she could clearly see the "rise" in the porch. She approached the porch, stepped up with her left foot and as she brought her right foot up, she caught her right sneaker under the lip of the porch and fell forward. As a result of the fall, the plaintiff injured her shin bone, knee, and jaw. As she hit the porch, her lower jaw hit her upper jaw causing her to break a cap she had on her right K-9 tooth. The cap was knocked off, but remained in her mouth. As a dentist, she believed that keeping the cap, post and core intact, as much as possible, would increase the odds of saving the root.

After the fall, the plaintiff continued into the post office, mailed the package and drove herself back to the dental office where her husband, also a dentist, worked. No one offered her any medical assistance or offered to call an ambulance at the Post Office. Indeed, the plaintiff felt that the need for

treatment was urgent, but not life threatening. There are differing accounts of whether she spoke with the postmaster that day, but at some point she did speak with the postmaster and the postmaster filled out an incident report.

After returning to her dental office, the plaintiff's husband examined the injury to her tooth and determined that the cap was broken and the partial dental appliance attached to it could no longer be held in place. He determined that the root could not be saved and must be removed. He then removed the remaining portion of the root, curettaged the socket, applied antibiotics and sutured the wound. He temporarily repaired her bridge until a new one could be fitted. According to the plaintiff's husband, another tooth was loosened as a result of this incident and/or the resulting procedure, which also had to be extracted. These procedures, according to plaintiff's husband, had her in a dental chair for eight hours. Additionally, the loss of the teeth caused a change to her facial appearance, which was described by her husband as a flattening of the face. The plaintiff did not supply any medical record concerning the loss of the second tooth, any bill for the services from her husband, nor any bill for the lab work related to the new appliance.

The plaintiff also called a civil engineer, Johann Szautner, who examined the area in question and took photographs on January 21, 2004. Mr. Szautner testified that industry standards require a step to have a riser of no more than 7 inches. According to Mr. Szautner's measurements, the elevation on the side of the concrete porch varied incrementally from 9¼" to 12⅛" along its width. While no one testified to the width of the porch, the court

has estimated, from the pictures entered into evidence, that the width was approximately ten feet.  Additionally the nosing or lip of the porch extended out 1½", however industry standards recommend not more than a 1¼" overhang. Mr. Szautner also noted that there were no warning signs, no parking signs nor any other restrictions as to where a patron could park or access the porch to the Post Office. According to Mr. Szautner the facility, which is leased to the Post Office, was built or remodeled in 1999. It was not in violation of any Greentown building codes as there were not any in the township at that time the building was constructed nor at the time of this accident.

Also testifying at the trial was the postmaster, Michelle Santarelli Kato. Ms. Kato testified that she was working at the facility the day of the accident and went out to the plaintiff as soon as she was advised of the accident. The plaintiff advised Ms. Santarelli that she was in a hurry, did not have time to talk and was "okay." The postmaster testified that the plaintiff was parked approximately 3 feet from the side of the porch in a mail drop off area that was not lined for parking. This area was for people to pull up in their cars to drop off mail in mailboxes adjacent to the building, without getting out of their vehicles. Beyond that area was where postal employees would load and unload postal trucks, tractor trailers and wheeled carts.

The postmaster testified that no other accident had ever been reported at this location, no one had ever reported a problem in this area, no one had ever fallen in this area and no one had ever complained or reported it as a

y
w

dangerous condition of any kind. She reported that there are twenty parking spots in the proper parking lot and she has never seen them all taken, at one time, during her four years as postmaster at Greentown. The Postmaster also testified that she has walked on and off that portion of the porch on many occasions without incident. That portion of the concrete porch does not lead to a public parking area and was not an intended entry way onto the Post Office porch.

**Conclusions of Law**

Based upon the law applicable to this case, the credible testimony and evidence presented at trial the court makes the following conclusions of law.

1) The plaintiff properly exhausted her administrative remedies prior to instituting suit and the court has jurisdiction over this matter pursuant to 28 USC §1346(b) as this is a claim for person injuries allegedly caused by the negligence of United States Postal Employees acting within the scope of their employment.

2) Pennsylvania law applies, as agreed by the parties, because the alleged negligent conduct occurred in the Commonwealth of Pennsylvania. Montaperto v. Split Rock Resort, 765 F. Supp. 852 (M.D.Pa. 1991), aff'd w/o opinion, 958 F.2d 364 (3d Cir. 1992).

3) The plaintiff was a business invitee of the United States Post Office because she was on the premises to purchase postage and mail a package.

4) Under Pennsylvania law, the owner or occupier of land has a duty to protect the plaintiff from foreseeable harm. The owner or occupier is subject to liability where it:

> (a) knows or by exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitee; and,
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and,
> (c) fails to exercise reasonable care to protect them against the danger.

Banks v. Trustees of the Univ. Of Pennsylvania, 666 A.2d 329, 331 (Pa. Super. 1995); Carrender v. Fitterer 503 Pa. 178 (1983); see also Restatement of Torts (Second) §§332 & 343.

5) These obligations do not, however, render the land occupier an insurer against any type of accident that might occur on the premises or befall a patron. There is no obligation to protect invitees from conditions which the land occupier could not have reasonably anticipated would pose a danger or whose danger is so obvious and apparent that the invitee could reasonably be expected to take note of them and protect himself against them. As noted in the Restatement of Torts (Second):

> (1) a possessor of land is not liable to (its) invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement of Torts (Second) §343A.

A danger is deemed obvious if both the condition and the concomitant risk

7

would be apparent to and would be recognized by a reasonable man, in the invitees position exercising "normal perception, intelligence and judgment." Montaperto v. Split Rock Resort, supra, at 855 (citing W. Prosser, Law of Torts. (4th ed. 1971) §61, p. 392.

  6) The plaintiff has failed to prove her case by the preponderance of the evidence. The plaintiff entered the side porch of the Greentown Post office in a location that was not reasonably designed as an entrance way. This is clear from the exhibits submitted by both parties. (Trial exhibits, Plaintiff's 2-4 and Defendant's 3-7, 9 and 10). In fact the area was designed for drive up mail boxes and a loading ramp and dock used by tractor trailers or postal workers with wheeled carts. Unlike the public area of the parking lot, there were no marked parking spots in the area that the plaintiff chose to park.

  7) The side of the porch, itself, did not involve an "unreasonable risk of harm" even though it was constructed in a manner that changed in elevation from 9¼ inches to 12⅛ inches over an approximate 10 foot run and had a 1 ½" lip . The change in elevation comports with the general slope of the land in the non parking lot area. While the better practice may have been to place a railing on the porch at that location as espoused by the plaintiff's expert, on the evidence before the court it cannot be said that the failure to do so made the condition an "unreasonable risk of harm." As such the plaintiff has failed to prove the first element of the required duty of care. Banks, supra.

  8) Even assuming the side of the porch and its 1½" overhang was an unreasonable risk of harm, the condition was so obvious and open that anyone

with normal perception, intelligence and judgment would take notice and protect themselves accordingly. In the instant case the plaintiff was very familiar with the premises having visited it hundreds of times in the past. The weather conditions and visibility on the day of the accident could not have been more favorable, the plaintiff was wearing appropriate shoes and testified that she clearly saw the rise in the porch. In light of all the circumstances, the plaintiff has failed to prove the second element of the required duty of care. Banks, supra.

9)   In the alternative, even had the court found that the plaintiff had proven, by a preponderance of the evidence, that the defendant was negligent, the court would be constrained to find that her own comparative negligence bars recovery. See Williams v United States, 507 F. Supp. 121 (E.D.Pa. 1981); 42 Pa. C. S. A. §7102(a). As noted above, the day was bright, sunny and dry. The plaintiff was very familiar with the area in question and the premises in general. She was in a hurry to mail a package and parked in an area not designated by parking lot lines, because she did not want to "squeeze" her car in between other parked cars. The area she parked her car was actually a right of way for cars to drive up and drop off mail. This may have also resulted in her "hurry" because she would have been aware that her parking location would have blocked others from using the drive up mail boxes at the post office. She was carrying a package in her hands as she attempted to step onto the side porch area, which the court finds could have resulted in her failure to pay sufficient attention to negotiating the step-up necessary to access the

porch from this location. Based upon all the credible testimony and evidence adduced at trial, the court finds that the negligence of the plaintiff was, in any event, greater than 50% and any possible negligence on behalf of the defendant. This conclusion necessarily bars any recovery under Pennsylvania comparative negligence law. See <u>Williams</u>, supra.

10) In light of the foregoing it is not necessary to make findings of fact and conclusions of law related to the questions of damages.

11) An appropriate order will follow in accordance with these findings of fact and conclusions of law.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: May 8, 2007**
O:\shared\MEMORANDUMS\2004 MEMORANDUMS\04-0060.01.wpd